Our first case on the call of the docket today, Wednesday, September 14, 2011, is agenda number six, case number 111168, People v. Adams. Counsel for the appellant, please proceed. May it please the court. Counsel, Assistant Attorney General David Simpson, on behalf of the people of the state of Illinois. The defendant in this case raises four claims of error, all arising from comments that the prosecutor made during closing argument. Each of these comments could have been addressed or corrected if defendant had raised them below. But defendant did not object to them at trial, and he did not mention them in his post-trial motion. And as a result, he has forfeited every claim now before this court. And so the question in this case is whether these repeatedly forfeited comments nevertheless entitle defendant to reversal of his conviction under this court's plain error rules. For either of two reasons, they do not. First, under this court's former jurisprudence and under what the people believe to be the better rule, the comments were not plain error because they were not so inflammatory that defendant could not have received a fair trial or so flagrant as to threat the deterioration of the judicial process. If we were to conclude that the remarks were improper, how can the error not fit within the first prong of the plain error rule, given that the only witnesses were the, I think, the defendant and the police? No evidence of fingerprints, DNA that linked the defendant to this crime? Two answers for that question, Your Honor. First, with regard to the conclusion that the errors were improper, every closing argument claim has both, requires two steps. So even if a closing argument claim is preserved, this court must find both that the comments were improper and then that they caused substantial prejudice such that real justice was denied. So there's a built-in prejudice determination after, for every closing argument claim, after finding that the comments were improper, specifically as to, as to. With those facts, if we conclude that it wasn't proper in considering those facts of the witnesses, no DNA, nothing else, it would not rise to the level of being considered as plain error? Correct, Your Honor. And the reason we believe that is that, is that as this court recently reaffirmed in People v. Kenyatta White, the prejudice determination in plain error is a, is a qualitative, not a merely quantitative analysis. So it's not just enough to say that two witnesses have disagreed about something. The, the court emphasized that this is a common sense analysis that the court must undertake to see whether the case was a close one. Here, Your Honor, what we have is the logical testimony of two police officers that is facially credible, but weighed against that, we have a facially incredible story from the defendant. The defendant testified that, that there just happened to be an open bag of drugs lying in the middle of a parking lot, in the exact spot where he happened to be pulled over and where the officers happened to search him, and then for no reason apparent in the record, the two police officers decided to lie about it in court and pin it on him. Under these sorts of facts, it is true that the case rested on, on contending credibility determinations, but the evidence wasn't close given that these, you have two facially credible stories weighed against one facially incredible story. But Counselor, isn't the situation here not about the credibility of each witness necessarily, but about what's not in the evidence, and that is that the police officer is more credible than the other because he wouldn't face telling a lie on the stand, and therefore, he's more likely not to lie. So that's going to the comment about the police officers risking their jobs, credibility, and freedom. Right, because there's no evidence in the record, and closing arguments or arguments should be based on what evidence is in the record. Now, if the State had put someone on to say that the consequences of an officer lying on the stand would be dismissal, then you would have something in the record. It's true that there's no specific testimony in the record in that regard, but this Court's precedents make clear that a prosecutor may comment on any reasonable inference from the evidence. Whether somebody's a police officer or not, it is reasonable to infer that someone risks their credibility by lying, that they risk their job by committing a crime, and that they risk their freedom by committing a felony. So the comments that the prosecutor made regarding those we believe were not improper in the first instance because those are all reasonable inferences, whether somebody's a police officer or whether they're not a police officer. But the comment was with regard to a police officer, which would have bolstered his position in the community to be more truthful than not. Isn't that right? It was in regard to a police officer, and it was intended to argue that the police officers would be credible. The question, though, is not just whether it was arguing that the police officers should be more credible, but whether it was unfair for the prosecutor to have argued that the police officers would be more credible. And because all of the arguments in that regard were based on reasonable inferences, sort of common sense inferences from the evidence, it was not unfair for the prosecutor to have argued that. An added point regarding those particular comments, as the appellate court frankly acknowledged, and this is at pages 11 and 12 of the People's Appendix, there's a split in Illinois law regarding whether comments of that nature are improper or not. As a result, it simply cannot be said that the error here was plain, clear, or obvious, given the split. I'd like to return, if I could, if there are no further questions on that point, just to the initial point that I wanted to make about why we believe this court should revise its plain error jurisprudence and hold that the defendant is not entitled to reversal unless he can show that the prosecutor's comments were so inflammatory that he could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process. And before I do, I'd like to lay out the three standards that we have at issue, because there's a lot of abstract language and I think it makes sense to lay them out at the outset. The first standard at issue is the evidence is closely balanced standard, and that's prong one of this court's current disjunctive plain error rule. The second standard at issue is substantial prejudice such that real justice was denied or that the verdict resulted from the error. That is the standard that is built into every closing argument claim, even if the closing argument claim is preserved. It's just in the same way that a prejudice showing is built into a Strickland claim or a Brady claim, and that is higher than the closely balanced standard. We know that from this court's 2005 decision in People v. Johnson. And then the last standard we have in play is that the error affected the fairness of the trial and challenged the integrity of the judicial process, and that's prong two of this court's current plain error jurisprudence. So what's the problem with the way the law currently stands? Well, there are at least two. First is that the appellate courts haven't been applying it consistently. So in this case, the appellate court held first that the prosecutor's comments were improper and then that the evidence was closely balanced, and then reasoned that that entitled the defendant to reversal. But that was a mistake. If the error had been preserved, the defendant would have to show substantial prejudice, such that real justice was denied or that the verdict resulted from the error. In other words, the appellate court held the defendant to a lower standard of prejudice than he would have been required to show if his claim had been preserved. And for that reason, the appellate court actually granted the defendant a windfall in this case, and for that reason alone, this court should clarify that. But the second problem is more fundamental, and it's that even when the plain error rule is properly applied, it does not discourage defendants from forfeiting their claims or encourage them to raise timely objections in the trial court. To obtain reversal on a preserved closing argument claim, as I've discussed, a defendant must show substantial prejudice, such that real justice was denied or that the verdict resulted from the error. The additional requirement that the defendant show that the evidence is closely balanced adds nothing to that showing. It makes it no more difficult for the defendant to obtain reversal than it would have been if he had preserved the error. And so that is why we believe the court should be refining its plain error rule as it applies to closing argument cases. Now, I want to make a couple of things clear about what we are not asking the court to do today. We are not asking this court to adopt the federal plain error standard from United States v. Alano. We are not asking this court to overrule Herron. Herron was not a closing argument case. Instead, the question here is not whether Herron should be overruled, but whether Herron, a case that did not involve closing argument, should be read to overrule the weight of pre-Herron authority on how to deal with closing argument claims. And because of the problems resulting when Herron is applied to closing argument claims, we believe that Herron should not be so read. For those reasons, and for the ones in our brief, this court should hold as it once did that when a defendant forfeits a closing argument claim, that claim can entitle him to reversal only where the statement was so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten the judicial process. And so if the court has no further questions about that, I'll move on to our second argument, which is that even under this court's current plain error rule, defendant is not entitled to reversal here. At the outset, many of the comments that the defendant complains about were not erroneous, much less plainly erroneous. As I've discussed, the prosecutor's references to the officers risking their credibility, jobs, and freedom were all based on reasonable inferences. Anyone risks their credibility by lying, their jobs by committing a crime, or their freedom by committing a felony. Moreover, given the clear split in the lower courts on the matter, it cannot be said that the error was plain, clear, or obvious. Similarly, with regard to the claim that the prosecutor improperly referred to defendant's post-arrest silence, this claim simply can't be squared with defendant's own trial testimony. Defendant himself testified that he did not remain silent upon his arrest, but instead gave exculpatory statements to the officers. As a result, it cannot be plain error for his trial counsel to have failed to raise or for the trial court to have failed to rule on a post-arrest silence claim where defendant himself testified under oath that he did not remain silent upon his arrest. But taking a step back for a moment, as I've discussed, some of the comments that the prosecutor made were not error, much less plain error. As we acknowledge in our brief, however, several of the comments that the prosecutor made were improper, but none of these comments entitled defendant to reversal of his conviction. That is because he cannot show that the evidence was closely balanced, nor can he meet the built-in standard for every closing argument claim, even when preserved, of showing substantial prejudice such that real justice was denied or that the verdict resulted from the error. And as I discussed earlier, here we have the two facially credible stories of the police officers stating that they found drugs on the defendant, incident to a lawful search. And as this Court, again, emphasized in People v. White, this is a qualitative, not a quantitative analysis, and common sense comes into play. And when we weigh these two facially credible stories against the defendant's facially incredible story, it simply cannot be said that this case was one where the evidence was close or one where there was substantial prejudice to the defendant such that real justice was denied. And then as a final note, this error did not challenge the integrity of the judicial process under this Court's second disjunctive plain error prong. Prong two error is extremely rare in closing argument cases. Defendant only cites one case where this Court has found prong two error in a closing argument case. That is People v. Blue, and this case is simply not Blue. As we discuss at length in our brief, Blue involved a repeated series of deliberately, and the Court characterized it as cynically prejudicial actions on the part of the prosecutor. And not only that, but many of those errors were objected to at trial and were only forfeited because they had not been placed in the defendant's post-trial motion. And what this Court, looking at all of the errors that happened in Blue, said is this simply cannot stand. This is a breakdown in the judicial process and a breakdown in the adversary process. Here, however, this case is simply not Blue. There is no challenge to the integrity of the judicial process because there is no breakdown in the adversary system. All of the errors that the defendant raises now could have been addressed or corrected if he had raised them in a timely manner at trial by a timely instruction from the trial judge. But the defendant did not do so. Instead, he only raised three of the errors for the first time in the appellate court and one of the errors for the first time in this Court. So if Your Honors have no further questions, then we would ask that this Court reverse the appellate court and affirm the defendant's conviction. Thank you, Counsel. Counsel for the appellee. May it please the Court. Good morning, Your Honors, Counsel. My name is Brian Cohut and I represent Mr. Romney-Adams. This case is about a prosecutor's repeated use of improper argument to sway a jury's credibility determination. Factually, as the State has pointed out, two officers, Sergeant Joe Bowers and Deputy Kevin Schumacher, testified that cocaine was recovered from Mr. Adams' pocket. However, Mr. Adams testified that police officers picked cocaine up off the ground. Thus, the critical question for the jury, as specifically acknowledged by the prosecutor in his closing argument and by the State here before this Court, was the credibility of the witnesses. But in his closing argument, the prosecutor improperly swayed this determination by repeatedly arguing facts that were not in evidence in order to bolster the credibility of his witnesses, while at the same time denigrating Mr. Adams' credibility by improperly commenting on his post-arrest silence. Today, Mr. Adams will first discuss the comments themselves and whether they were erroneous. Then he will discuss whether he was prejudiced by these comments such that reversible error occurred. Finally, Mr. Adams will argue that the reversible errors amounted to plain error. Mr. Adams has identified eight improper comments in four separate categories during the prosecutor's short summation. The State has admitted that several of the prosecutor's comments were improper. First, the prosecutor improperly bolstered Sergeant Bowers' credibility. He stated, and I quote, his memory is clear on this. He generated a report on this matter shortly after the stop. So what Sergeant Bowers told you today from the stand is what he stated happened two years ago. He locked himself into his version of events when he wrote his report shortly thereafter. That is what he testified to, unquote. However, no report was ever materially discussed at trial, and the prosecutor improperly corroborated Bowers' testimony using facts that were not in evidence. Second, the prosecutor argued that he could have presented the testimony of three other police officers who would have corroborated the testimony of Bowers and Schumacher. The prosecutor stated, quote, I could have brought in all of those officers if I wanted to, paraded them in front of you, and told you what happened, and they all would have said the same thing. But there is no indication as to what the other three officers would have testified to, and the prosecutor improperly corroborated the testimony of his witnesses using these facts that were not in evidence. How many officers responded to the stop? There were five officers present at the time. There were three officers in Bowers, and there's Bowers, Schumacher, and Buck who were the first officers on the scene, and then two other officers backed them up. So there were five officers total, two of which testified here. Three did not testify, but the prosecutor argued that they would have said the same thing as the two who actually did testify. Was it Bowers, if that's how it's pronounced, or Schumacher who did the actual search? I believe it was Bowers that did the actual search. He's the one that testified that he pulled it out of his pocket. Mr. Adams testified that Buck actually put her hand in his pocket, but he did not state that she recovered anything from there. I know you weren't here yesterday, but we had a case dealing with a video dispute, but I presume that obviously there was no video in this case. No, there was absolutely no video in this evidence. There was absolutely no extrinsic evidence showing that Mr. Adams possessed the cocaine. There was no physical evidence. There was no fingerprints on the baggie. His conduct was not inconsistent with innocence. There was no paraphernalia found on this person or in his car, and he was not under the influence. There was absolutely no other evidence to show that he possessed this other than the testimony of the officers. Then in direct contrast to these admittedly improper comments that served to significantly enhance his witness's credibility, the prosecutor improperly argued that Mr. Adams' testimony was a recent fabrication because he, unlike Bowers, failed to describe the events prior to trial. The State claims that Mr. Adams cannot argue this was an improper comment on his post-arrest silence because he testified that he told Bowers that he did not throw the substance on the ground. However, in Doyle, the case that created the constitutional rule, the defendant testified that when he was arrested, when he was, I'm sorry, when he was told the reason for his arrest, he said, I don't know what you were talking about. Thus, the rule applies to actual silence and exculpatory statements that are not inconsistent with trial testimony. Furthermore, this Court rejected the State's present argument in Herrott, and it should reject it here as well. In cases such as Herrott, where the defendant told the arresting officer that he had never been to the area in question, Nitz, where the defendant told the arresting officer he knew who the real killer was, and Beller, where the defendant had asked police if an accomplice had been arrested, this Court held that the prosecutor improperly commented on the defendant's post-arrest silence, even though the defendants had made comments to the police. Consequently, the prosecutor improperly argued that Mr. Adams never offered his version of the event between the time he was arrested and his trial in order to show that his testimony was not credible because it was not corroborated in contrast to Bowler's testimony, and such comment was erroneous. But there was no objection to any of this at trial. That's correct, Your Honor. There were no contemporaneous objections, and it was not raised in the motion for new trial. It was not raised in the post-trial. That is accurate. Does that mean the defendant has less of a burden to show plain error, more of a burden, same burden? No. It's essentially the same burden. The State argues that the two burdens are different, whether he was substantially. Did they argue plain error on appeal? I'm sorry. I'm sorry, Your Honor. Did they argue plain error on appeal? Did the defense argue that? Yes. Yes. In regard to, just to clarify, in regard to at least three of the comments. The State here has argued that the prongs are the same. That the substantial prejudice prong of the prosecutorial misconduct claim is the same as the closely balanced prong of plain error review. However, as this Court's holding in Johnson indicates, and I believe this is a 2005 case issued after Herron, the two prongs are not the same. There, this Court held that although the evidence was closely balanced, the defendant was not substantially prejudiced by the error. Thus, they are different tests. The prosecutor also argued facts that were not in evidence and improperly bolstered the credibility of the officers when he argued that they would not risk their credibility, reputation, jobs, and freedom by planting cocaine on the defendant or setting him up. Yes. Why is it permissible for someone to comment on the credibility of a police officer? A prosecutor can comment on the credibility of a police officer. However, what he did here was he introduced additional facts to where the jury could use these facts in order to find that the testimony of the officer was credible. It wasn't the case here where he said, well, you saw him on the stand. You saw him testify. You saw his body language. You determine whether he's credible or not. The prosecutor introduced specific facts, consequences that the officers would risk by testifying falsely or otherwise manipulating the evidence. Actually, he said planting the evidence that the officers would suffer in order to bolster their credibility. Simply stated. On that particular point, Counsel, you're indicating that the testimony would only be the type of testimony that could be elicited if the officers had actually said on the stand that I wouldn't do this and risk my job, for example? That's Mr. Adams' contention here, Your Honor, yes. The state, of course, argues. Couldn't that be within the average juror's intelligence that presumably an officer would not risk his job for this? That's essentially what the state argues here. They argue that there's a reasonable inference that the jury could determine that the officers were not subject to perjury. However, the prosecutor argued that the police officers would not plant the evidence on Mr. Adams or set him up over eight-tenths of a gram of cocaine. And there was no indication. The prosecutor never argued perjury. He argued planting evidence. And there was no evidence of any consequences to the police officers by planting evidence. Even if this comment is a reasonable inference from the facts, Your Honor, without any testimony as to the potential consequences, then prosecutors could argue that every police officer would not risk their job by testifying falsely in every case. However, this is not true of all lay witnesses. A witness with no job or who is self-employed does not risk consequences to his job by testifying falsely. The inference would lead to the conclusion that police officers as a profession would have more at risk and therefore be more likely to tell the truth. But a police officer's testimony is to be viewed just like that of any other witness. And this comment was therefore improper. Next, Mr. Adams was substantially prejudiced by these improper comments. This case boiled down to a credibility contest. The jury was provided with two, as Justice Friedman pointed out, the jury was provided with two divergent versions of the same event. It was for the jury to determine which witnesses were more credible and which version of the event to believe. However, the prosecutor improperly skewed this credibility determination by repeatedly arguing facts that were not in evidence in order to bolster the credibility of his witnesses, while at the same time denigrating Mr. Adams' credibility by improperly commenting on his post-arrest silence. Thus, Mr. Adams was substantially prejudiced by the prosecutor's improprieties in this case. Counsel, from your view, and I know you've laid this out in the brief and brought with me different quotes from the closing argument, but just to prioritize, what would be the most egregious statement that you say is the introduction of facts,  In my opinion, Your Honor, it would be the argument that Sergeant Bowers' report that was written contemporaneously with the event corroborated his testimony, juxtaposed against, where there was no evidence of the report, juxtaposed against the statements improperly commenting on defendant's post-arrest silence. What the prosecutor did here, he said, Sergeant Bowers, he wrote this report at the time of the arrest. His testimony is corroborated. The defendant didn't say anything at the time of his arrest. This is a recent fabrication. So in comparing the two, I think the one fact that's not in evidence that's most egregious in this case is the report. And you're saying that fact bolsters the credibility of the police officer? Absolutely, Your Honor. This may or may not be a fair question. I don't know if you've got that excerpt nearby that you could just restate the line or tell us exactly where it is. Yeah, it's in the record on page 384. And the prosecutor stated, his memory is clear on this. He generated a report on this matter shortly after the stop. So what Sergeant Bowers told you today from the stand is what he stated happened two years ago. He locked himself into his version of events when he wrote his report shortly thereafter. That is what he testified to. And the State admits that this comment was erroneous. Yes, Your Honor. The State admits that this comment was what? That it was erroneous. This was an improper comment because it was based on facts that were not in evidence. That's Sergeant Bowers' report. Turning back to my argument regarding plain error, Your Honors, and Justice Freeman again touched on this, the jury's decision in this trial hinged on the credibility of the witnesses. The police officer said that the cocaine was recovered from Mr. Adams, but Mr. Adams said it was retrieved from the ground. And as stated previously, there was no physical evidence whatsoever connecting Mr. Adams to the cocaine. Furthermore, there was nothing inherently incredible or self-contradictory about Mr. Adams' testimony. The obvious implication was that the officers threw the substance on the ground and confronted Mr. Adams with it so they could get him to turn over information regarding criminal activity in the area. This is not entirely implausible. In any event, it was a question for the jury to determine free of prosecutorial improprieties. However, instead of allowing the jury to make its credibility determination based solely on the evidence, the prosecutor repeatedly argued facts that were not in evidence in order to bolster his witness' credibility. The prosecutor then juxtaposed this evidence with improper arguments stating that Mr. Adams failed to offer his defense prior to trial, thereby denigrating his credibility. Thus, the prosecutor's improper comments in closing argument tipped the balance of the evidence in this otherwise closely balanced case. Finally, Your Honors, the State argues that this Court should abandon the closely balanced prong of plain error review in closing argument cases. This Court should reject this request. This Court has considered and rejected the State's invitation to abandon the closely balanced prong of the plain error rule as recently as 2005 inherent. It has subsequently reviewed errors in closing argument under this prong, and it has not felt the need to abandon it. Also, abandoning this prong in closing argument cases would inevitably require a reexamination of this prong in other cases, creating an issue-by-issue standard of plain error review. Furthermore, there is no compelling reason to abandon the closely balanced prong of the plain error doctrine and claims involving prosecutorial misconduct in closing argument. The State argues that the closely balanced prong requires the same showing as the substantial prejudice prong. However, as noted previously, this Court has held that they are not the same. Even if both prongs did require the same showing, the defendant has an incentive to object in order to gain an acquittal, especially in a case such as this where he's subject to probation, and he will have served his time before this case winds its way through the appellate process. Even if a defendant has no incentive to object, the State's sandbagging argument wrongly assumes that a criminal defense attorney would risk an ineffective assistance of counsel claim, disciplinary action, and a potential malpractice suit by intentionally ignoring a known error. In short, the State has failed to show compelling reasons for changing this Court's established law, and a different standard is not necessary. Mr. Cahoot, I want to go back just briefly to the officer's report. I believe the State argues that the defense brought the report up during the course of examination. Does that make any difference, if in fact that's correct? It makes absolutely no difference, Your Honor, because the prosecutor's argument did not highlight anything the defense counsel presented. The prosecutor argued that Bowers wrote the report contemporaneously with the event. The defense counsel merely asked, 742, that was in your report, and yes, that was the answer. That was in the report, I'm sorry. He said 742, that was in the report, and Bowers said yes, but the defense counsel never brought up the fact that whether it was contemporaneous with the arrest or not. And more importantly, the content of the report was never discussed. So there's no indication on the record prior to the prosecutor's argument that the report actually bolstered the content of the report. It never bolstered or corroborated Bowers' testimony. I'd like you to comment on this. It seems to me the State is bringing up the specter that defense counsel is better off not objecting to what would be objectionable closing argument, because the same standard would be applied by this Court in determining whether to grant a new trial, whether the comments were inflammatory and prejudicial, and therefore there's no opportunity to correct what could be corrected at trial had an objection been made. Would you comment on that? Oh, yes. As stated previously, the substantial prejudice prong of closing arguments, the requirement is different than proving closely balanced under plain error review. So they're not the same. And also, assuming that a defendant would not stand by a claim in a case like this, it assumes that, I'm sorry, Your Honor, let me back up just a moment. A criminal defendant has an interest in getting acquitted. He would not stand by a claim and sit in prison for three years waiting for this to wind its way through the appellate process, hoping that this Court would overturn his conviction. And also, this sandbagging claim assumes that the defense attorney would intentionally ignore the known error, and he suffers potential consequences as a result of that. As I stated, you know, ineffective assistance of counsel claim and possible disciplinary action. In conclusion, Your Honors, the prosecutor made eight improper comments in a short closing argument. He argued that facts that were never presented to the jury bolstered the credibility of his witnesses. Then, juxtaposed against this improper bolstering, the prosecutor denigrated Mr. Adams' testimony by commenting on his post-arrest silence. Mr. Adams, substantially prejudiced by the prosecutor's improper argument, in this Court should review his testimony. I view the issue as plain error. What was the physical scene, as testified to by the officer and then by the defendant, when the officers first arrived at this scene and when the defendant first saw the officers? What was going on? Essentially, the testimony is not that different at that point. The officers stated that they, one officer stated that he had checked Mr. Adams' registration, saw that he was driving on suspended license. At which point did that happen? That happened, Mr. Adams was parked at a liquor store across the street from where he was arrested. Okay. And the officers, they ran his plates and they found out Mr. Adams did not have a valid, or he was driving on suspended license. Mr. Adams drove across the street. When he drove across the street, the police officers followed him, pulled behind him. According to the officers, they pulled up next to him. According to Mr. Adams, they pulled behind him. According to Bowers' testimony, he approached the vehicle and informed Mr. Adams that he was driving on a suspended license and he was subject to arrest. I had the impression this was in the middle of a big field. Oh no, Your Honor, this is in a high drug activity area. This is right in front of a, it was a busy, I believe it was a supermarket. Right just before the supermarket was closing. Were other people around? It was certainly not in the middle of a cornfield, no, Your Honor. Were there others around? As far as I know, there were. What was the amount of the drugs recovered? It was eight-tenths of a gram of cocaine. A very small amount, a very small package. Street value? Maybe $80. Thank you. Just out of curiosity, wasn't the one officer a Forest Preserve? Yes, one officer was a Forest Preserve. It appears that this was a task force. They were specifically out looking for gang, drug, and firearm activity. Okay. Okay? Thank you. For the foregoing reasons and for the reasons, yes, Your Honor. One more question. Okay. The items recovered, were they susceptible to being, having DNA evidence extracted from them or prints extracted from them? Well, of course, I'm no expert on it, but I think they could. There was no testimony? There was no plastic baggie. There was no testimony indicating any testing, actually, I believe. Certainly, there was no fingerprints recovered from the item. There was no testimony as to any DNA from the item. It was a plastic corner baggie, and I don't know if they could recover. I imagine that they could in specific circumstances, maybe, maybe not. I really don't know the answer to that, Your Honor. But there was none recovered here. Thank you. Okay. Thank you, Your Honors. Thank you, Your Honors. I'd like to touch on at least, or touch on just three points very quickly. First, regarding the discussion of the comments about the officers risking their jobs, credibility, and freedom, as I discussed before, there's a clear split in authority on this in the Illinois appellate courts. The appellate court in this case acknowledged that, and under those circumstances, it certainly couldn't be plain error. Moreover, while it is a reasonable inference to suggest that an office, that anyone risks their job by committing a crime, their credibility by lying, or their freedom by committing a felony, that does not mean that a defendant is barred from arguing contrary reasonable inferences. There is almost, in every case, going to be numerous reasonable inferences that can be drawn from the same facts. Given that both sides are free to argue competing reasonable inferences, it cannot be said that anything was unfair about what the prosecutor did here, drawing one reasonable inference, when defense counsel and defendant were free to argue a contrary reasonable inference. Second, and again to clarify, we are not asking this court to overrule Herron, a case that did not involve closing argument, and we're not asking for a broad overhaul of this court's plain error jurisprudence. Instead, what we're asking for is a very self-contained rule, and one that used to exist at Illinois law, that applies specifically to closing argument claims, because for the reasons we've discussed in our brief, the built-in prejudice standard that is involved in every closing argument claim makes this a unique area of Illinois law, and one that is deserving of a unique rule. While I would agree that it is generally a good idea to have this court's rules to be as simple as possible, I would add the caveat that the rule should still be serving its intended function. And as we discussed, we don't believe that the current plain error rule, as applied to closing arguments, serves its intended function. Finally, I just wanted to touch on some of the factual details here, and going to whether the evidence was closely balanced or not. As defense counsel pointed out, when defendant was searched, he was already under arrest for driving with a suspended license. So there's no need at this point for the officers to trump up charges in order to arrest him. He had already been placed under arrest. And then just to clarify exactly what the defendant testified to, the key portions of his testimony are at page 299 and 300, and then at page 324 and 325. This was a unit that was investigating possible drug activity? Yes. I believe it was a gangster. That's why they were out there. Correct, Your Honor. Correct, Your Honor. And so that's why we had, I believe there was a forest preserve officer. They weren't looking for license violations. That's correct, Your Honor. So the officers testified that they were running license plates as cars went by and then as pulled up, that the driver had a suspended license. Did they come in hot, or was it just a quiet operation? What they... Sirens, Morris lights. My understanding is that they saw the defendant leaving a parking lot and going across the street into a different parking lot. At that point, they turned on their lights. I don't recall that they turned on sirens, but I just don't remember from the record, and pulled him over in a parking lot immediately across the street. How many cars? One car, Your Honor. Three officers in one car, and then after the defendant had been arrested, other officers arrived on the scene as well. Taking a look at the defendant's testimony, what the defendant testified on page 324 of the record, or I'm sorry, on page 325 of the record, he said, it didn't look like a bag to me, it looked like a flat piece of paper with something white that was laying on the ground. Like a quarter bag, it wasn't knotted up or anything, it was lying flat on the ground. I don't know how it could have been in anybody's pocket. Now, I think this sort of defendant's own words here, I think, run contrary to the idea that the police officers just dropped something on the ground. If the bag is lying flat and open, and again, we're talking about a small amount of cocaine here, .8 grams of cocaine, that's not the sort of thing you could pull out of your pocket and drop. As a matter of fact, the defendant himself thought it was something that couldn't have been in someone's pocket. Under these circumstances, it really does seem to be that the defendant's story was that this very small, this bag was lying open and untouched in exactly the same place where he happened to be arrested and happened to be searched. Now, that's not completely outside the realm of possibility, but it is fantastically improbable. And so when we weigh that against the facially credible or facially logical stories of the two police officers, it simply cannot be said that the evidence in this case was close. And so if this Court has no further questions, then we would ask that this Court revise its plain error jurisprudence or in the alternative, that under its current plain error jurisprudence, that it reverse the appellate court and affirm the defendant's conviction. Thank you, Your Honors. Thank you. Case number 111168, People v. Adams, is taken under advisement as agenda number six.